James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey  07068
(973) 994-1700

Gary E. Mason
Esfand Y. Nafisi
Benjamin Branda
WHITFIELD BRYSON & MASON LLP
1625 Massachusetts Avenue, NW, Ste. 605
Washington, DC 20036
(202) 429-2290

Christopher A. Seeger
Jeffrey S. Grand
Scott Alan George
SEEGER WEISS LLP
77 Water St., 26th Fl.
New York, New York 10005
(212) 584-0700

Elizabeth J. Cabraser
David S. Stellings
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94114
(415) 956-1000

Adam J. Levitt
Edmund S. Aronowitz
GRANT & EISENHOFER P.A.
30 North LaSalle Street, Suite 2350
Chicago, Illinois  60602
(312) 214-0000

Timothy G. Blood
Thomas J. O'Reardon
Paula M. Roach
BLOOD HURST & O'REARDON, LLP
701 B Street, Suite 1700
San Diego, California  92101
(619) 338-1100

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DENISE DeFIESTA, CARRIE LASPINA and JOHN FERNANDEZ, individually and on behalf of all others similarly situated,<br><br>                                               Plaintiffs,<br><br>               v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC.,<br><br>                                               Defendant. | Civil Action No. 15-7012 (JLL)(JAD)<br><br><br>**FIRST AMENDED COMPLAINT<br> AND DEMAND FOR JURY TRIAL** |

Plaintiffs Denise DeFiesta, Carrie Laspina and John Fernandez ("Plaintiffs"), individually

and on behalf of all others similarly situated, alleges the following against Volkswagen Group of

America, Inc. ("Defendant" or "Volkswagen"), based where applicable on personal knowledge, information and belief, and the investigation of counsel.

## NATURE OF THE ACTION

1.      This action is about an unprecedented case of criminal fraud perpetrated on consumers and regulators by one of the world's largest auto manufacturers.

2.      Since 2009 over 482,000 diesel Volkswagen and Audi vehicles sold in the United States were sold with a "defeat device" to create the impression of high fuel efficiency and high performance with  extremely low emissions. A "defeat device" is nothing less than a software trick that was deliberately designed by Defendant's engineers to make the engine more cleanly when emission testing was being conducted, but otherwise to run more powerfully and fuel efficiently (at the expense of being clean).  Defendant marketed vehicles with these defeat devices as "green" and environmentally friendly, when in fact these representations were hollow. Defendant's vehicles possessed none of the promised attributes.

3.      According to the United States Environmental Protection Agency ("EPA"), Volkswagen installed its "defeat device" on Type EA 189 and EA 288 diesel 2.0 liter turbo engines in the following vehicles: 2009-2015 Volkswagen Jetta; 2009-2015 Volkswagen Beetle; 2009-2015 Volkswagen Golf; 2014-2015 Volkswagen Passat; and 2009-2015 Audi A3. Additional vehicles and model years may be added to this list as new facts are discovered.

4.      Defendant not only intentionally misrepresented the ability of the vehicles to deliver high performance and fuel economy with low and legally mandated emissions, but Defendant created a way to make it appear to regulators as if the vehicles at issue delivered on this promise and complied with law.

5.     The defeat devices that Defendant designed and installed worked by switching on the full emissions control systems only when the car's emission systems were undergoing testing. When switched on the defeat device reduced the vehicles' performance, limiting acceleration, torque and fuel efficiency to clean up its act.

6.     When the defeat devices were not activated – *i.e.*, when occasional emissions testing was not being performed – the vehicles delivered the promised fuel efficiency and performance at the expense of the "clean" emissions claims made by the defendants and required by government regulators. During normal operation the vehicles emitted between 10 and 40 times as much pollution into the environment as is allowed under the Clean Air Act and state regulations.

7.     Defendant's violations of the Clean Air Act and various state regulations are detailed in a Notice of Violation the EPA issued to Defendant, as well as a letter from the California Air Resources Board ("CARB"), copies of which are attached to this Complaint as Exhibits A and B, respectively.

8.     Once the existence of the defeat devices became known, the scandal spread worldwide.  The Type EA 189 and EA 288 engines have been installed in approximately 11 million vehicles worldwide, including those sold under Volkswagen's Volkswagen, Audi, Skoda and SEAT brands.

9.     Volkswagen immediately admitted that the subject automobiles contained the defeat device.  At a press conference on Monday, September 22, 2015, the head of Volkswagen's U.S. operations, Michael Horn, stated "[W]orst of all, we were dishonest to our customers.  We totally screwed up."

10.     In addition, Volkswagen announced that it was suspending sales of the subject vehicles in the United States until the defeat devices were removed from the vehicles and the vehicles were actually legal to sell within the United States.

11.     On September 23, 2015, one day after admitting that 11 million Volkswagen-made cars have software that dupes official emissions tests, Martin Winterkorn, Volkswagen's CEO, resigned from his post, stating: "I am shocked by the events of the past few days . . . . Above all, I am stunned that misconduct on such a scale was possible in the Volkswagen Group."

## **PARTIES**

12.     Plaintiff Denise DeFiesta is a citizen of the State of Maryland, residing in Chesapeake Beach, Maryland.  She is the original owner of a 2013 Volkswagen Passat equipped with a Type EA 189 engine.

13.     Plaintiff Carrie Laspina is a citizen of the State of New Jersey, residing in Oakland, New Jersey.  She is the original owner of a 2010 Volkswagen Jetta equipped with a Type EA 189 engine.

14.     Plaintiff John Fernandez is a citizen of the State of Pennsylvania, residing in Gibsona, Pennsylvania.  He is the original owner of a 2011 Volkswagen Jetta equipped with a Type EA 189 engine, which was purchased from Douglas Volkswagen in Summit, New Jersey.

15.     Defendant Volkswagen Group of America is a New Jersey corporation with its principal place of business at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171, and Eastern Regional headquarters located in Woodcliff Lakes, New Jersey.

16.     At all relevant times, Volkswagen manufactured, distributed, sold, leased and warranted the vehicles with defeat devices under the Volkswagen and Audi names throughout

the United States.  The defeat device, engine, and engine control systems were all designed by Volkswagen or its agents. Volkswagen also developed and distributed its owners' manuals, warranty materials, advertisements and other promotional materials related to the vehicles containing defeat devices.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is a citizen of a state other than that of Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

18.     This Court has personal jurisdiction over Defendant because it is incorporated in New Jersey and conducts regular and continuous business in New Jersey.

19.     Venue is proper in this District under 28 U.S.C. 1391(b) because Defendant is incorporated under the laws of New Jersey and because Defendant has caused harm to Class members residing in this District.

## DEFENDANT'S MISCONDUCT TOLLS THE STATUTE OF LIMITATIONS

**A.      Discovery Rule Tolling**

20.     Plaintiffs and members of the proposed Class could not have discovered that Volkswagen concealed and misrepresented the true emissions levels of its vehicles through the use of defeat devices.

21.     Volkswagen's efforts to deceive consumers and regulators were the result of painstaking concealment and fraud with respect to Volkswagen's CleanDiesel engines, engine control systems and defeat devices.

22.     Neither Plaintiffs nor members of the Class could reasonably discovered, or have reason to suspect, that Volkswagen intentionally concealed information within its knowledge

from federal and state regulators, Volkswagen's dealerships, and consumers.  Indeed, the whole purpose of the defeat devices was to engage when the vehicles were being tested for exhaust emissions with the intent of concealing the fact that the exhaust emissions actually exceeded amounts allowed by applicable regulations.

23.     Thus, even a reasonable and diligent investigation by consumers could not have discovered that Volkswagen solely possessed information about the existence of its sophisticated emissions fraud scheme.  Plaintiffs and Class members had no way of learning that Volkswagen was flouting applicable federal and state emissions standards as well as consumer law.

**B.      Tolling Due To Fraudulent Concealment**

24.     All applicable statutes of limitation have been tolled by Volkswagen's active fraudulent concealment of the facts alleged in this Complaint.

25.     Rather than disclosing the vehicles' true performance, fuel economy, emissions, and compliance with federal and state emission standards, Volkswagen actively concealed and misrepresented them through the use of defeat devices.

**C.      Estoppel**

26.     Volkswagen was under a continuous duty to disclose to consumers, including Plaintiffs and the other Class members, the facts that it knew about the emissions, fuel economy and performance of the vehicles equipped with defeat devices, and of those vehicles' inability to comply with federal and state emission standards.

27.     Volkswagen violated this duty and unlawfully circumvented federal and state emission standards through the use of defeat devices, and Volkswagen intentionally misrepresented the ability of the subject vehicles to comply with state and federal law regulating vehicle emissions and clean air.

6

28.     Volkswagen is therefore estopped from relying on any statutes of limitation defenses in this action.

## FACTUAL BACKGROUND

29.      Defendant designed and sold cars that were designed to, and did, mislead consumers and regulators about the vehicles' emissions, fuel efficiency and performance. Despite touting the "green" benefits of its diesel vehicles, Defendant sold cars that produced pollution up to 40 times higher than advertised, and then intentionally concealed the truth about those cars through a sophisticated scheme involving defeat devices.

**A.      Volkswagen Sells The "Green" Diesel Image To Consumers**

30.     For years, Volkswagen advertised its diesel vehicles as fuel efficient cars with low emissions. Consumers have responded to these advertisements, making Volkswagen the largest seller of diesel passenger vehicles in the United States.

31.     While under 1% of automobiles sold in the U.S. are powered by diesel engines, approximately 23% of those sold by Volkswagen are diesels, with those vehicles making up the bulk of diesel automobile sales in the U.S.

32.     Part of Volkswagen's success owes to the promotion of their diesel cars as "clean" and "green" vehicles.  In fact, "CleanDiesel" is a marketing term used by Volkswagen to market the vehicles at issue in this action.[1]

33.     Volkswagen's website boasts that the Audi A3 TDI and VW Jetta TDI were named the 2010 Green Car of the Year and the 2009 Green Car of the Year, respectively.

34.     Defendant also supported and directed a website to promote its "green" diesel technology, www.clearlybetterdiesel.org, which states that Volkswagen's technology reduces

---

[1]      An example of a commercial touting how "clean" Volkswagen diesels is available at https://www.youtube.com/watch?v=WNS2nvkjARk and (last visited September 22, 2015)

smog and "meets the highest standards in all 50 states, thanks to . . . innovative engine technology that burns cleaner."

35.     In addition to touting the low emissions of the subject vehicles, Volkswagen touted the fuel efficiency of the vehicles, in that they could achieve over 40 miles per gallon of fuel and travel over 800 miles on a tank of fuel.[2]

36.     Further, Volkswagen recently began promoting the performance of its diesel powered automobiles, to overcome the consumer perception that diesel automobiles were slow and sluggish.[3]

**B.     Volkswagen Intentionally Concealed Its Vehicles' Excessive And Illegal Pollution Emissions.**

37.     On September 18, 2015, the EPA issued a Notice of Violation ("NOV") to Volkswagen. The NOV details how Defendant installed sophisticated software in the Volkswagen and Audi diesel vehicles that detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the tests.  At all other times that the vehicle is in operation, the emissions controls are deactivated, permitting pollution to be freely released into the environment at levels that far exceed those allowed by federal and state clean air regulators. This software produced and used by Volkswagen is a "defeat devices" as defined in the Clean Air Act.

38.     Volkswagen programmed the engine control computers in the vehicles with defeat devices to detect when cars are undergoing emissions testing. When testing is occurring, the

---

[2]      Examples of commercials touting the fuel efficiency of Volkswagen diesels are available at                    https://www.youtube.com/watch?v=a2CNHVXvNRo                    and https://www.youtube.com/watch?v=wj3if2gRWYE (last visited September 22, 2015).

[3]      An     example     of     such     a     commercial     is     available     at https://www.youtube.com/watch?v=0VA51xWXZ3g,  (last visited September 22, 2015)

defeat device alters the vehicle's engine and exhaust systems such that emissions standards are met. When testing is not being performed the engine control systems operate the vehicle in a way that does not comply with EPA omissions requirements.

39.     Moreover, under normal operating conditions, the engines produce more power and higher fuel efficiency than they would if they complied with EPA emissions requirements.

40.     Because of this software, Defendant's diesel vehicles can seemingly meet emissions standards while emitting nitrogen oxides (NOx) at up to 40 times the standard allowed under federal and state laws and regulations during the normal operation of the vehicles.

41.     The Clean Air Act sets emissions standards for vehicles and requires vehicle manufacturers to certify to the EPA that vehicles sold in the United States meet applicable federal emissions standards. All vehicles sold in the United States must be covered by an EPA-issued certificate of conformity. Under federal law, cars equipped with defeat devices, which reduce the effectiveness of emissions control systems during normal driving conditions, cannot be certified. Volkswagen violated the Clean Air Act, defrauded its customers, and engaged in unfair competition by manufacturing and selling vehicles with defeat devices that allowed for higher levels of emissions than were certified by the EPA.

**C.     Defendant Charged A Premium For Its "Clean" And "Green" Diesel Technology**

42.     Volkswagen charged substantial premiums for vehicles equipped with defeat devices.

43.     The table below sets forth the price premium for each comparable base, mid-level, and premium trim for each affected model:

| Model | Base | Mid-level | Premium |
|-------|------|-----------|---------|
| VW Jetta | $2,860 | $4,300 | $6,315 |

| VW Beetle | $4,635 | n/a | $2,640 |
| VW Golf | $2,950 | $1,000 | $1,000 |
| VW Passat | $5,755 | $4,750 | $6,855 |
| Audi A3 | $2,805 | $3,095 | $2,925 |

**D.    Volkswagen's Misconduct Has Injured Class Members**

44.    Despite the EPA ordering Defendant to recall vehicles equipped with defeat devices, purchasers of the subject vehicles have and will continue to suffer significant harm. First, the only way for Volkswagen to make the vehicles comply with emissions standards will be to significantly reduce the vehicles' horsepower, torque and fuel efficiency. Thus, if made EPA compliant, Class members will suffer actual harm and damages because their vehicles will no longer perform as advertised and warranted.

45.    Second, Class members' vehicles will suffer from a significant diminution value by being made EPA compliant, because not only did Class members overpay for their vehicles, but they will be forced to pay much more to fuel their less fuel efficient vehicles.

46.    Owners of vehicles equipped with defeat devices have suffered losses of money or property because of Volkswagen's unfair, deceptive, and/or fraudulent business practices, and its failures to disclose the true emissions of the vehicles.

47.    Had Plaintiffs and the Class members known of the defeat device at the time they purchased or leased their vehicles, they would not have purchased or leased their vehicles, or they would have paid less than they did. Even if Volkswagen recalls the defeat device vehicles and degrades the engine performance of the vehicles to make them compliant with EPA standards, Plaintiffs and Class members will be forced to spend more on fuel and will not receive

the advertised performance of their vehicles. The recalled vehicles will be worth less in the used marketplace because of their decrease in performance and efficiency, which means that owners of these vehicles will not be able to recoup the expected value of these vehicles in the future.

### PLAINTIFFS' FACTS

48.     Denise DeFiesta is the owner of a 2013 Volkswagen Passat.

49.     Fiesta purchased the car because she was interested in fuel efficiency.  She was concerned that a diesel engine would contribute to pollution of the environment, but her research revealed that the Passat ha a "clean: diesel engine.  DeFiesta relied on Defendant's statement that the Passat was a clean, low-emission vehicle, in deciding to purchase the vehicle.

50.     DeFiesta would not have purchased the vehicle if she had known that the emissions were much higher than advertised and the engine was not "clean."   DeFiesta is concerned that if she repairs the vehicle it will cost her more for fuel and she will experienced degraded performance.  She is also concerned that regardless of whether or not she has the vehicle repaired, it will lose value.

51.     Carrie Laspina is the owner of a 2010 Volkswagen Jetta.

52.     Laspina purchased the vehicle because she was concerned about the environment and Volkswagen advertised the vehicle as being environmentally friendly.

53.     Laspina would not have purchased the vehicle if she had known that the emissions were much higher than advertised and the engine was not "clean."   Laspina is concerned that if she repairs the vehicle it will cost her more for fuel and she will experienced degraded performance.  She is also concerned that regardless of whether or not she has the vehicle repaired, it will lose value.

54.     John Fernandez is the owner of a 2011 Volkswagen Jetta.

55.     Fernandez purchased the vehicle because she was concerned about the environment and Volkswagen advertised the vehicle as being environmentally friendly.

56.     Fernandez would not have purchased the vehicle if he had known that the emissions were much higher than advertised and the engine was not "clean."    Fernandez is concerned that if he repairs the vehicle it will cost him more for fuel and he will experienced degraded performance.   He is also concerned that regardless of whether or not the vehicle repaired, it will lose value.

## CLASS ACTION ALLEGATIONS

57.     Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons or entities in the United States who are current or former owners and/or lessees of a Volkswagen or Audi vehicle with a Type EA 189 or EA 288 diesel 2.0 liter turbo engine, including, without limitation: 2009-2015 Volkswagen Jetta; 2009-2015 Volkswagen Beetle; 2009-2015 Volkswagen Golf; 2013-2015 Volkswagen Passat; and 2009-2015 Audi A3.

58.     Excluded from the Class are individuals who have personal injury claims resulting from the defeat device in the Class Vehicles. Also excluded from the Class are Volkswagen and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his or her immediate family. Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

59.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis as would be used to prove those elements individual actions alleging the same claim.

60.     This action has been brought and may properly be maintained on behalf of the class proposed herein under Federal Rule of Civil Procedure 23.

61.     **Numerosity**. The members of the class are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. While Plaintiffs believe that there not less than hundreds of thousands of members of the class, the precise number of Class Member is unknown at this time, but may be ascertained from Volkswagen's records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, or published notice.

62.     **Commonality**. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including:

a.     Whether Volkswagen engaged in the conduct alleged herein;

b.     Whether Volkswagen designed, advertised, marketed, distributed, leased, sold, or otherwise placed defeat device vehicles into the stream of commerce in the United States;

c.     Whether the CleanDiesel engine system in the Class Vehicles contains a defect in that it does not comply with EPA requirements;

d.     Whether the CleanDiesel engine systems in the subject vehicles can be made to comply with EPA standards without substantially degrading the performance or efficiency of the vehicles;

e.     Whether Volkswagen knew about the defeat device and, if so, how long it possessed this knowledge;

13

f.     Whether Volkswagen designed, manufactured, and distributed the subject vehicles with a defeat device;

g.     Whether Volkswagen's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

h.     Whether Plaintiffs and the other Class Members overpaid for their vehicles;

i.     Whether Plaintiffs and the other Class Members are entitled to equitable relief, including, but not limited to, restitution or other injunctive relief; and

j.     Whether Plaintiffs and the other Class Members are entitled to damages and other monetary relief and, if so, in what amount.

63.     **Typicality**. Plaintiffs' claims are typical of the other Class Members' claims because, among other things, all Class members were comparably injured through Volkswagen's wrongful conduct as described above.

64.     **Adequacy**. Plaintiffs are adequate Class representative because their interests do not conflict with the interests of the other members of the Class he seeks to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.  The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

65.     **Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2)**. Volkswagen has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

66.   **Superiority**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Volkswagen, so it would be impracticable for members of the Class to individually seek redress for Volkswagen's wrongful conduct.

67.   Should individual Class Members be required to bring separate actions, this Court and/or courts throughout the United States would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

## <u>COUNT I</u>
### (Common Law Fraud )

68.   Plaintiffs repeat the allegations set forth above as if fully set forth herein.

69.   Plaintiffs bring this claim on behalf of the Nationwide Class.

70.   Volkswagen engaged in both speaking and silent fraud, and in fraudulent and deceptive conduct, throughout the Class Period.  As described above, Volkswagen's conduct defrauded Plaintiffs and Class Members, intending and leading them to believe, through affirmative misrepresentations, omissions, suppression and concealments of material fact, that the Class Vehicles, marketed by Volkswagen as "clean diesel" vehicles, possessed important

characteristics that they in fact did not possess, namely the combination of low emissions, high performance, and fuel economy, and inducing their purchases.

71.     Volkswagen's intentional and material misrepresentations included, among other things, its advertising, marketing materials and messages, and other standardized statements claiming the Class vehicles (a) were clean and eco-friendly and (b) combined low emissions with high performance and strong fuel economy.

72.     The foregoing misrepresentations were uniform across all Class Members.  The same advertisements were shown to all members of the public generally and the same marketing materials were distributed to customers and potential customer, and all of the materials contained the same standardized statements relating to the Class Vehicles' environmental friendliness, performance and fuel economy.

73.     These representations directly contradicted the true nature and hidden design of the Class Vehicles and their actual emissions when operating under normal circumstances. Volkswagen knew the representations were false when it made them, and intended to defraud purchasers thereby.

74.     Volkswagen also had a duty to disclose, rather than conceal and suppress, the full scope and extent of the emissions deception because:

        a.     Volkswagen had exclusive knowledge of the actual emissions in the Class Vehicles and concealment thereof;

        b.     The details regarding the actual emissions in the Class Vehicles and concealment thereof were known and/or accessible only to Volkswagen;

        c.     Volkswagen knew Plaintiffs and Class Members did not know and could not reasonably discover the actual emissions in the Class Vehicles and

16

concealment thereof; and

d.      Volkswagen made general representations about the qualities of the Class

Vehicles, including statements about their performance, fuel economy,

and emissions, which were misleading, deceptive and incomplete without

the disclosure of the fact that Volkswagen secretly designed and installed

defeat device software on the Class Vehicles that was intended to conceal

the vehicles' exceedingly high and illegal emission levels from

governments, consumers, and the public.

75.     Volkswagen's concealment was likewise uniform across all Class Members in that Volkswagen concealed from everyone other than itself, including potential customers and regulators, the true facts relating to the emission levels of the Class Vehicles.

76.     Volkswagen's misrepresentations and omissions were material in that they would affect a reasonable consumer's decision to purchase or lease a Class Vehicle.  Consumers paid a premium for the clean diesel Class Vehicles precisely because they supposedly offered low emissions and fuel economy without sacrificing performance.  Volkswagen's conduct, misrepresentations, omissions, concealment, and suppression, undermined the core value proposition that induced consumers to purchase or lease the Class Vehicles, and directly affect both the quality and worth of the vehicles.

77.     Volkswagen's intentionally deceptive conduct – its silent fraud and fraud by concealment – likewise induced the Class Vehicles' purchase by Plaintiffs and Class Members, and the resulting harm and damage to them.

78.     Plaintiffs relied upon Volkswagen's misrepresentations and concealment of the true facts.  Class Members are presumed to have relied upon Volkswagen's misrepresentations

and concealment of the true facts because those facts are material to a reasonable consumer's purchase the Class Vehicles.

79.     As a result of Volkswagen's inducements, Plaintiffs and Class Members have sustained significant damage, including, but not limited to, lost vehicle value and diminished vehicle quality and utility.  If Plaintiffs and Class members had known about the defeat device and the unlawful emissions at the time of acquisition, they would not have acquired the Class Vehicles.  Indeed, the Class Vehicles could not have been marketed or sold to any reasonable consumer had existence of the defeat device been disclosed.  Volkswagen is therefore liable to Plaintiffs and Class Members in an amount to be proven at trial.

80.     Volkswagen intentionally designed and engineered its "clean diesel" vehicles to deceive and cheat regulators and its customers.  Volkswagen touted the performance and environmental virtues of these vehicles, while concealing and suppressing the truth about them, for the purpose of inducing plaintiffs and the Class to buy them.  Volkswagen's fraud caused both the purchase and the harm.  In order to undo this harm, Volkswagen must repair or remediate the vehicles so that they deliver everything it promised when it sold them, or undertake to buy them back from Class Members in terms that are just and equitable under principles of rescission, restitution, and benefit of the bargain.

81.     Volkswagen's conduct was systematic, repetitious, knowing, intentional, and malicious, and demonstrated a lack of care and reckless disregard for the rights and interests of Plaintiffs, the public, and the environment.  Volkswagen's conduct thus warrants an assessment of punitive damages at the highest level allowed by applicable law, consistent with the actual harm it has caused, the reprehensibility of its conduct, and the need to punish and deter such conduct.

## COUNT II
### (Breach of Express Warranty)

82.     Plaintiffs repeat the allegations set forth above as if fully set forth herein.

83.     By advertising the "green" and "clean" qualities of its diesel engines, Defendant expressly warranted to purchasers of the Class Vehicles that the Vehicles at least complied with all applicable laws and regulations relating to exhaust emissions.  Stated differently, it would be impossible for an automobile to be "green" if it emitted more pollutants than were allowed by applicable environmental laws and regulations.

84.     Such statements became the basis of the bargain for Plaintiffs and other purchasers of the Class Vehicles because such statements are among the facts a reasonable consumer would consider to be material in the purchase of a vehicle.

85.     In fact, in ordinary driving conditions, the Class Vehicles did not comply with applicable environmental regulations, emitting between 10 and 40 times the amount of pollutants allowed.  As such, it was unlawful for Defendant to sell the Vehicles to the public.

86.     In addition, Defendant stated that the vehicles achieved certain a fuel efficiency in terms of miles per gallon of fuel when tested in accordance with applicable EPA regulations. Those statements created an express warranty that, under EPA test conditions, the vehicle achieved the stated fuel efficiency for purposes of making apples-to-apples comparisons with other vehicles.

87.     Testing under EPA regulations presupposes that the vehicles comply with all laws and regulations applicable to automobiles, including environmental regulations.

88.     In fact, had the Class  Vehicles been tested in accordance with EPA fuel efficiency standards while also complying with pollution regulations, they would have achieved significantly lower fuel efficiency than was stated on the EPA mileage sticker on the vehicle.

19

89.     As a result of the foregoing breaches of express warranty, Plaintiffs and other members of the Class have been damaged in that they purchased a vehicle that was unlawful to have been sold in the first instance, and, even if lawfully sold, was less valuable than what they paid for the Class Vehicles because the Vehicles do not comply with applicable environmental regulations and cost more to operate because, if they are repaired to conform with applicable environmental regulations, they will be less efficient to operate and incur higher fuel costs.

## COUNT III
### (Breach of Implied Warranty of Merchantability)

90.     Plaintiffs repeat the allegations set forth above as if fully set forth herein.

91.     Section 2-314 of the Uniform Commercial Code provides that, unless disclaimed, there is an implied warranty of merchantability with respect to the goods being purchased.

92.     Among the warranties included within the implied warranty of merchantability is that the goods would pass without objection in the trade under the contract description, and are adequately labeled.

93.     For the reasons set forth above, the Class Vehicles would not pass without objection in the trade because the retail sale by the manufacturer of a vehicle that contains a defeat device is unlawful.

94.     In addition, the Class Vehicles are not adequately labeled because they misstate that the Class Vehicles comply with EPA regulations, and the stated gas mileage for comparison purposes was not achieved by testing in accordance with EPA testing procedures.

95.     As a result of the foregoing breaches of warranty, Plaintiffs and other members of the Class have been damaged in that they purchased a Vehicle that was unlawful to have been sold in the first instance, and, even if lawfully sold, was less valuable than what they paid for the Vehicles because the Vehicles do not comply with applicable environmental regulations and cost

20

more to operate because, if they are repaired to conform with applicable environmental regulations, they will be less efficient to operate and incur higher fuel costs.

## COUNT IV
### (Magnuson-Moss Act (15 U.S.C. §§ 2301, *et seq.*) – Implied Warranty)

96.     Plaintiffs repeat the allegations set forth above as if fully set forth herein.

97.     The Class   Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

98.     Plaintiffs and Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

99.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

100.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

101.    Defendant provided Plaintiffs and the other Class members with an implied warranty of merchantability in connection with the purchase or lease of their Vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).   As a part of the implied warranty of merchantability, Defendant warranted that the Class Vehicles would pass without objection in the trade as designed, manufactured, and marketed, and were adequately labeled.

102.    Defendant breached these implied warranties, as described in more detail above, and are therefore liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1).

103.    Any efforts to limit the implied warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Class Vehicles is null and void.

104.    Plaintiffs and the other Class members have had sufficient direct dealings with either Defendant or its agents (dealerships) to establish privity of contract.

105.    Nonetheless, privity is not required here because Plaintiffs and other Class members are intended third-party beneficiaries of contracts between Defendant and its dealers, and specifically, of the implied warranties. The dealers were not intended to be the ultimate consumers of the Class  Vehicles and have no rights under the warranty agreements provided with the Class  Vehicles; the warranty agreements were designed for and intended to benefit consumers.

106.    Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give the Vehicle Manufacturer Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

107.    The amount in controversy of Plaintiffs' individual claims meet or exceed the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.  Plaintiffs, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in value of their Vehicles, in an amount to be proven at trial.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs

and the other Class members in connection with the commencement and prosecution of this action.

108.    Further, Plaintiffs and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1).

## COUNT V
### (Unjust Enrichment)

109.    Plaintiffs repeat the foregoing allegations as if fully set forth herein.

110.    Defendant has been unjustly enriched in that it intentionally sold vehicles with defeat devices which were intended to mask the fact that the Class Vehicles did not comply with applicable automobile exhaust regulations and, in fact, emitted between 10 and 40 times the pollutant allowed by those regulations.

111.    When purchasing their vehicles, Plaintiffs and other Class Members reasonably believed that the Class  Vehicles complied with applicable environmental regulations and, if properly tested in accordance with EPA mileage standards, would achieve for comparison purposes the mileage stated on the window sticker of the vehicles.

112.    Plaintiffs and other Class Members got less than what they paid for in that the Class Vehicles did not comply with applicable environmental regulations, nor was the EPA mileage stated on the sticker usable for comparison purposes for other vehicles.

113.    The foregoing did not occur by happenstance or conditions out of Defendant's control.  In fact, the Vehicles were deliberately designed to comply with environmental regulations only when being tested and were known and intended by Defendant to not comply with applicable regulations under ordinary driving conditions.

## COUNT VI
### (Violation of the Maryland Consumer Protection Act (Md. St. § 13-101 *et seq.*))

114.   Plaintiffs repeat the foregoing allegations as if fully set forth herein.

115.   Plaintiff DeFiesta is a "consumer" as defined by the Maryland Consumer Protection Act, Md. St. § 13-101(1).

116.   The Class Vehicles are "merchandise" and Defendant is a "merchant" as defined in the Act.

117.   Defendant's sale of the Class Vehicles constitutes an unfair and/or deceptive trade practice in violation of Md. St. § 13-303 in that Defendant advertised and promised that the Class Vehicles were of a particular quality when in fact they were not.

118.   Plaintiff and other class members suffered actual damages as a result of Defendant's unfair and deceptive trade practices in that they received vehicles that were less valuable than they should have been, for the reasons set forth above.

## COUNT VII
### Violation of the New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1 *et seq.*)

119.   Plaintiffs repeat the foregoing allegations as if set forth fully herein.

120.   The New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1 *et seq.*) ("NJCFA") states, in relevant part:

> any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise. . . ." N.J.S.A. 56:8-2.

121.   The New Jersey members of the Class are consumers who purchased and/or leased Class Vehicles for personal, family, or household use.

122.    The advertisement, promotion, distribution, supply, sale, or lease of Class Vehicles is a "sale or advertisement" of "merchandise" governed by the NJCFA.

123.    Prior to the New Jersey members of Class's purchase of the Class Vehicles, Defendant violated the NJCFA in the following respects:

      a.    Defendant made uniform representations that its diesel vehicles were of a particular standard, quality, or grade when they were and are not, and that they would perform as represented when they did not, as set forth above;

      b.    Made false and/or misleading statements about the capacity and characteristics of subject vehicles that, as set forth above, were unfair, deceptive, or otherwise fraudulent, had and continue to have the capacity to, and did, deceive the public and cause injury to New Jersey Plaintiffs and Class Members.

124.    Defendant, in their communications with and disclosures to the New Jersey members of the Class, intentionally concealed or otherwise failed to disclose that the Class Vehicles included a software program designed to cheat emissions testing, and that the true emissions of those Vehicles here far higher than claimed.

125.    The New Jersey members of the Class reasonably expected that the Class Vehicles complied with the represented and claimed emissions both prior to and at the time of purchase, and reasonably expected that Defendant did not use software or any other device or system to cheat emissions testing. These representations and affirmations of fact made by Defendant, and the facts concealed or failed to disclose are material facts that were likely to deceive reasonable consumers, and that reasonable consumers would, and did, rely upon in deciding whether or not to purchase or lease a subject. Defendant intended for consumers, like the New Jersey members of the Class and Class Members to rely on these material facts.

126.    Defendant had exclusive knowledge that the Class Vehicles had and have the defects set forth above, facts which were unknown to the New Jersey members of the Class. Due

to Defendant's exclusive knowledge of these material facts, it gave rise to a duty to disclose these facts. Defendant failed to disclose these material facts.

127.    The injury to consumers by this conduct greatly outweighs any alleged countervailing benefits to consumers or competition under all circumstances. There is a strong public interest in reducing emission levels, as well as truthfully advertising emission levels.

128.    Had the New Jersey members of the Class known about Defendant's use of the software device to cheat the emissions test, and/or that the Class Vehicles did not comply the with Defendant's advertised emissions and did not operate as advertised, they would not have purchased and used the Class Vehicles.

129.    As a direct and proximate result of Defendant's actions, the New Jersey members of the Class and Class Members have suffered ascertainable loss and other damages.

WHEREFORE, Plaintiffs, individually and on behalf of other Class members respectfully request that the Court enter judgment in their favor and against Volkswagen, as follows:

A.    Certification of the proposed Class, including appointment of Plaintiffs' counsel as Class Counsel;

B.    An order temporarily and permanently enjoining Volkswagen from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in the Complaint.

C.    Injunctive relief in the form of a buy back, recall or free replacement program;

D.    Costs, restitution, actual damages, punitive damages and disgorgement in an amount to be determined at trial;

E.    Revocation of acceptance;

F.    Damages under the Magnuson-Moss Warranty Act;

G.      For treble- or punitive damages as permitted by law;

H.      An order requiring Volkswagen to pay both pre- and post-judgment interests on

any amounts awarded;

I.      An award of costs and attorneys' fees; and

J.      Such other or further relief as may be appropriate.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO P.C.
Attorneys for Plaintiffs


By:____/s/ James E. Cecchi_____
        JAMES E. CECCHI

Dated:  September 23, 2015

Gary E. Mason                          Steven E. Fineman
Esfand Y. Nafisi                       David S. Stellings
Benjamin Branda                        LIEFF CABRASER HEIMANN &
WHITFIELD BRYSON & MASON LLP           BERNSTEIN, LLP
1625 Massachusetts Avenue, NW, Ste. 605   250 Hudson Street, 8th Floor
Washington, DC 20036                   New York, NY 10013
(202) 429-2290                         (212) 355-9500

Christopher A. Seeger                  Adam J. Levitt
SEEGER WEISS LLP                       Edmund S. Aronowitz
77 Water Street, 26th Floor            GRANT & EISENHOFER P.A.
New York, New York 10005               30 North LaSalle Street, Suite 2350
(212) 584-0700                         Chicago, Illinois  60602
                                       (312) 214-0000

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &               Timothy G. Blood
BERNSTEIN, LLP                         Thomas J. O'Reardon
275 Battery Street, 29th Floor         Paula M. Roach
San Francisco, California 94114        BLOOD HURST & O'REARDON, LLP
(415) 956-1000                         701 B Street, Suite 1700
                                       San Diego, California  92101
                                       (619) 338-1100

Peter Prieto
John Gravante III
PODHURST ORSECK P.A.
25 West Flagler Street, Suite 800
Miami, Forida 33130
(305) 358-2800

W. Daniel "Dee" Miles, III
H. Clay Barnett, III
Archie I. Grubb, II
Andrew E. Brashier
BEASLEY, ALLEN, CROW,
  METHVIN, PORTIS & MILES, P.C.
272 Commerce Street
Post Office Box 4160
Montgomery, Alabama  36104
(334) 269-2343

Michael A. Kelly
Khaldoun A. Baghdadi
WALKUP, MELODIA, KELLY
& SCHOENBERGER
650 California Street, 26th Floor
San Francisco, California   94108
(415) 981-7210

Kim D. Stephens
Jason T. Dennett
TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
(206) 682-5600

Gregory F. Coleman
GREG COLEMAN LAW PC
550 Main Avenue, Suite 600
Knoxville, Tennessee 37902
(865) 247-0080

## DEMAND FOR JURY TRIAL

The undersigned hereby demands a trial by jury as to all issues so triable.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO P.C.
Attorneys for Plaintiffs

By:    /s/ James E. Cecchi              
            JAMES E. CECCHI

Dated: September 23, 2015

Gary E. Mason
Esfand Y. Nafisi
Benjamin Branda
WHITFIELD BRYSON & MASON LLP
1625 Massachusetts Avenue, NW, Ste. 605
Washington, DC 20036
(202) 429-2290

Christopher A. Seeger
SEEGER WEISS LLP
77 Water Street, 26th Floor
New York, New York 10005
(212) 584-0700

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94114
(415) 956-1000

Steven E. Fineman
David S. Stellings
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
(212) 355-9500

Adam J. Levitt
Edmund S. Aronowitz
GRANT & EISENHOFER P.A.
30 North LaSalle Street, Suite 2350
Chicago, Illinois  60602
(312) 214-0000

Timothy G. Blood
Thomas J. O'Reardon
Paula M. Roach
BLOOD HURST & O'REARDON, LLP
701 B Street, Suite 1700
San Diego, California  92101
(619) 338-1100

Peter Prieto
John Gravante III
PODHURST ORSECK P.A.
25 West Flagler Street, Suite 800
Miami, Forida 33130
(305) 358-2800

W. Daniel "Dee" Miles, III
H. Clay Barnett, III
Archie I. Grubb, II
Andrew E. Brashier
BEASLEY, ALLEN, CROW,
 METHVIN, PORTIS & MILES, P.C.
272 Commerce Street
Post Office Box 4160
Montgomery, Alabama  36104
(334) 269-2343

Michael A. Kelly
Khaldoun A. Baghdadi
WALKUP, MELODIA, KELLY
& SCHOENBERGER
650 California Street, 26th Floor
San Francisco, California   94108
(415) 981-7210

Kim D. Stephens
Jason T. Dennett
TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
(206) 682-5600

Gregory F. Coleman
GREG COLEMAN LAW PC
550 Main Avenue, Suite 600
Knoxville, Tennessee 37902
(865) 247-0080